**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**RAY JULIUS THOMAS, III (01),**

    **Defendant.**

**Case No. 18-40033-01-DDC**

### MEMORANDUM AND ORDER

This matter comes before the court on pro se[1] prisoner Ray Julius Thomas's Motion for Compassionate Release (Doc. 105). Mr. Thomas seeks compassionate release because of the COVID-19 pandemic. *Id.* at 1. The government has filed a Response (Doc. 108) and Mr. Thomas has replied (Doc. 110). Because Mr. Thomas's Reply provided new information about his compliance with the compassionate release statute's exhaustion requirements, the government has filed a second Response (Doc. 111). For reasons explained below, the court denies Mr. Thomas's motion.

**I.   Background**

In February 2019, the government charged Mr. Thomas by Superseding Information with possession with intent to distribute five or more grams of methamphetamine. Doc. 68 at 1. This charge, if proved beyond a reasonable doubt, would violate 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2. *Id.* at 1–2. In May 2019, Mr. Thomas entered a plea

---

[1]  Because Mr. Thomas proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

agreement with the government. Docs. 83 & 84. He pleaded guilty to the sole count in the Superseding Information. Doc. 84 at 1. The Presentence Investigation Report ("PSR") calculated a total offense level of 29 and a criminal history category of III, producing a Guidelines sentencing range of 108 to 135 months' imprisonment. Doc. 96 at 20 (PSR ¶ 97). On October 23, 2019, the court sentenced Mr. Thomas to 108 months' imprisonment, followed by four years of supervised release. Doc. 103 at 2–3 (Judgment). This sentence represented the bottom rung of the Guidelines range.

Mr. Thomas asserts he currently is incarcerated at FCI Forrest City Low. Doc. 105 at 1. He reports that he has "diabetes, high blood pressure, high cholesterol, [and] hypothyroidism" that require "chronic care," placing his health at serious risk should he contract the virus. *Id.*; *see also* Doc. 110 at 3–13 (Mr. Thomas's BOP medical records).

## II. Legal Standard

Binding authority from our Circuit establishes that "'[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'" *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)). Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a term of imprisonment but only if certain exceptions apply. For many years, these exceptions only permitted the Bureau of Prisons ("BOP") to bring a motion under the compassionate release statute. But in 2018, the First Step Act modified the compassionate release statute and authorized a defendant to file his own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018). This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure

of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Mr. Thomas submitted a request for compassionate release to the warden on June 11, 2020. Doc. 110 at 2. The warden denied his request on June 25, 2020. Doc. 111-1 at 1–2 (Warden's Mem. denying Mr. Thomas's request for reduced sentence because of COVID-19). The government concedes that Mr. Thomas has exhausted his administrative remedies because more than 30 days have elapsed since he filed a request with his warden. Doc. 111 at 7 (Government's Response). Also, the government does not argue the court lacks jurisdiction to consider Mr. Thomas's motion because he was required to appeal the warden's denial within the BOP before bringing his claim before this court.

In *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar. *Id.* at 832–34. Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked. *Id.* at 833. But, if not invoked, claim-processing rules are subject to waiver and forfeiture. *Id.* at 834; *see also Spaulding*, 802 F.3d at 1130–34 (Gorsuch, J., dissenting) (explaining why "§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule").

The Tenth Circuit hasn't yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. So, the court must predict how our Circuit would decide the question. The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit

3

would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Because Mr. Thomas waited 30 days after asking his warden to file a motion in federal court, he has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if he hasn't, the government explicitly has waived any objections to the exhaustion requirement. So, the court now turns to the substance of Mr. Thomas's motion.

### III.   Discussion

#### A.   The court exercises its discretion when deciding whether "extraordinary and compelling reasons" exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2) "[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13 application notes 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he

is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover. *Id.* § 1B1.13 application notes 1(A). Subdivisions (B) and (C) apply to age and family circumstances not invoked here. Subdivision (D) supplies a catchall provision: it applies when "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application notes 1(D).

Mr. Thomas plainly does not qualify under two of the four subdivisions in Note 1. He is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" addressed in Subdivision (C) apply. He also does not qualify under either of the two prongs described in Subdivision (A). Nothing suggests Mr. Thomas "is suffering from a terminal illness"—prong (i)—or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover from" it.[2] § 1B1.13 application notes 1(A).

This leaves Subdivision (D). The guidance in this subsection advises that § 1B1.13 applies when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[3] *Id.* § 1B1.13 application notes 1(D).

---

[2] Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process." § 1B1.13 application notes (1)(A)(ii). Mr. Thomas's motion does not invoke these alternatives.

[3] As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion. But the First Step Act broadened § 3582, so an inmate now can file a motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018). The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language in this Guideline provision still requires a motion by the BOP. *See United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020).

A few courts have ruled that only the BOP may invoke the "catchall" provision of subdivision (D). *Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020) (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)). But an "overwhelming majority of courts" have rejected this approach. *Id.* This majority has "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute." *Id.* (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling" reasons warrant compassionate release.

### B. Mr. Thomas has not established that "extraordinary and compelling reasons" warrant compassionate release.

Mr. Thomas seeks compassionate release because, he asserts, his various health conditions—diabetes, high blood pressure, high cholesterol, and hypothyroidism—place him at a high risk of complications from COVID-19, should he contract the virus. Doc. 105 at 1. The government concedes that Mr. Thomas's medical conditions "qualify as an extraordinary and compelling circumstance for this [c]ourt's consideration of a sentence reduction." Doc. 111 at 14. But, the government argues, Mr. Thomas's medical conditions don't "outweigh the gravity of his crime and the need for continued incarceration." *Id.* at 17.

To be sure, it is regrettable that Mr. Thomas is incarcerated during this pandemic. It is also regrettable that he has health problems. But the court isn't convinced that the combination of those two conditions qualifies him for release after he has served just 30% of his sentence. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next four paragraphs discuss them.

#### 1. Nature and Circumstances of the Offense[4]

In 2017, the DEA and the Topeka Police Department began investigating Mr. Thomas and his wife, Angela Thomas. Doc. 96 at 4 (PSR ¶ 10). Officers suspected the couple of distributing methamphetamine. *Id.* In December 2017 and January 2018, a confidential source

---

[4]  The facts discussed in parts 1–4 come from the PSR, which Mr. Thomas did not object to in any respect. Doc. 96 at 24 (PSR ¶ 123).

7

made three controlled purchases of methamphetamine from Mr. and Ms. Thomas. *Id.* at 4–5 (PSR ¶¶ 11–19). On January 25, 2018, officers executed a search warrant of Mr. Thomas's home. *Id.* at 5 (PSR ¶ 21). They found drug paraphernalia, methamphetamine, and a handgun. *Id.* (PSR ¶¶ 22–24). Based on the methamphetamine from the controlled purchases and the methamphetamine seized in the search, the PSR attributed 121.751 grams of methamphetamine to Mr. Thomas. *Id.* at 6 (PSR ¶ 27). In sum, Mr. Thomas committed a serious felony offense. The nature and circumstances of the offense do not favor Mr. Thomas's motion.

### 2. History and Characteristics of the Defendant

This felony was not Mr. Thomas's first serious crime. Mr. Thomas has one previous federal conviction for harboring a fugitive after escape. *Id.* at 12 (PSR ¶ 54). He also has numerous state and municipal convictions. *Id.* at 8–12 (PSR ¶¶ 43–53). His Shawnee County offenses include various crimes, *e.g.*, battery and possession and manufacturing of controlled substances. *Id.* at 9–12 (PSR ¶¶ 45, 48, 49, 51, 52, 53). These offenses produced a criminal history of score of five points for a category III classification. *Id.* at 12 (PSR ¶ 57). This factor disfavors Mr. Thomas's request.

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Thomas, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." 18 U.S.C. § 3553(a). Mr. Thomas received a significant but, in context, appropriate sentence. Reducing that sentence by 70% would produce a sentence that no longer reflects the seriousness of Mr. Thomas's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment.

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Reducing Mr. Thomas's sentence to time served would reduce it well below the applicable Guidelines range. No new circumstance justifies such a substantial disparity.[5]

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Thomas's motion seeks. Indeed, the only thing that favors his request is the fact that he regrettably suffers from various health conditions. The court recognizes that these conditions—at least in theory—have the potential to increase the severity of the sentence beyond the 108 months already imposed. *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . ."). But Mr. Thomas's health has not increased the severity of his sentence to the point where a 70% reduction in his custody sentence would represent a sufficient sentence.

The court is not prepared to accept that Mr. Thomas's health conditions provide sufficient reason for his release under § 3582(c)(1)(A). The court thus denies Mr. Thomas's Motion for Compassionate Release (Doc. 105).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Thomas's Motion for Compassionate Release (Doc. 105) is denied.

**IT IS SO ORDERED.**

---

[5] The court is mindful of the other factors identified by § 3553(a). They are not pertinent, however, to the current motion.

**Dated this 10th day of August, 2020, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**